UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED CENTRAL BANK,
successor by acquisition to Mutual Bank,

         Plaintiff,

- against -

SHREE GANESH PROPERTIES, LLC,

         Defendant.

10 Civ. 8116 (VB)(PED)

**REPORT AND RECOMMENDATION**

---

TO:  THE HONORABLE VINCENT BRICCETTI,
   UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Plaintiff United Central Bank brings this diversity action for foreclosure against Defendant Shree Ganesh Properties, LLC. On November 7, 2012, the Court awarded summary judgment to Plaintiff, granted Plaintiff's motion to strike Defendant's answer, and referred the matter to the undersigned for a computation of damages. Dkt. No. 28.

Having completed the computation, I respectfully recommend that the Court enter judgment for Plaintiff in the amount of **$11,933,020.84**, as of February 12, 2013. I further recommend that Plaintiff be awarded additional interest to accrue on the outstanding principal at the *per diem* rates set forth below from February 13, 2013 until the date of entry of judgment.

## II. BACKGROUND

### A.  The Loans

  1.  *The First Loan ("Loan 1")*

On or about June 20, 2007, Defendant obtained a loan from Plaintiff's predecessor-in-

interest in the principal amount of $7,120,000 plus annual interest of eight percent.[1] Defendant apparently used this loan, which was evidenced by a promissory note, Dkt. No. 34 (Affirmation of Scott J. Steiner ("Steiner Aff.")), Ex. 3(1)(B), and secured by a mortgage agreement, id., Ex. 3(1)(E), to purchase and renovate a hotel property in Poughkeepsie, New York. This property is the subject of the mortgage agreement between the parties.

The maturity date for this loan was June 20, 2012. Defendant promised to make monthly installment payments of principal and interest in the amount of $55,512.22 from July 20, 2007 through May 20, 2012 and to pay the entire outstanding balance of principal and interest on June 20, 2012. See id., Ex. 3(1)(B) ¶ 2.

2.  *The Second Loan ("Loan 2")*

On or about June 20, 2007, Defendant obtained a second loan—specifically, a revolving line of credit—from Plaintiff's predecessor-in-interest in the principal amount of up to $100,000 plus annual interest of eight percent. Defendant apparently used this loan, which also was evidenced by a promissory note, id., Ex. 3(1)(C), and secured by a mortgage on the Poughkeepsie property, id., Ex. 3(1)(F), for operations expenses at the Poughkeepsie property.

The maturity date for this loan originally was June 20, 2008. However, on June 20, 2008, the parties executed a second promissory note, id., Ex. 3(1)(D), extending the maturity date to June 20, 2009. Pursuant to these notes, Defendant promised to make monthly installment payments of interest only from July 20, 2007 through May 20, 2009 and to pay the entire outstanding balance of principal and interest by June 20, 2009. See id., Ex. 3(1)(C) ¶¶ 2–3; id.,

---

[1] On July 31, 2009, Plaintiff became the successor-in-interest to Mutual Bank, the original lender with which Defendant executed the promissory notes and mortgage agreements at issue in this action. See Dkt. No. 32 (Proposed Findings of Fact and Conclusions of Law) ¶ 2; Dkt. No. 37 (Am. Proposed Findings of Fact and Conclusions of Law) ¶ 2.

Ex. 3(1)(D) at 1 (unpaginated).

3.  *Common Key Terms*

The above-described agreements share the following key terms:

- The regular annual interest rate for each of the loans is a fixed rate of eight percent. See id., Ex. 3(1)(B) ¶ 2; id., Ex. 3(1)(C) ¶ 2; id., Ex. 3(1)(D) at 1.

- Defendant is required to pay a late charge of five percent of each monthly installment payment that reaches Plaintiff more than ten days late. See id., Ex. 3(1)(B) ¶ 5; id., Ex. 3(1)(C) ¶ 4; id., Ex. 3(1)(D) at 1.

- Defendant's failure to make timely payment constitutes an event of default. See id., Ex. 3(1)(B) ¶ 7(A); id., Ex. 3(1)(C) ¶ 6(A); id., Ex. 3(1)(D) at 1.

- In the event of default, the annual rate of interest increases by 400 basis points, or four percent, and shall continue to accrue at that increased rate until the default is cured. See id., Ex. 3(1)(B) ¶ 8; id., Ex. 3(1)(C) ¶ 8; id., Ex. 3(1)(D) at 1.

- Upon default, all or any part of the balance of unpaid principal and accrued interest becomes immediately due and payable. See id., Ex. 3(1)(B) ¶ 10; id., Ex. 3(1)(C) ¶ 9; id., Ex. 3(1)(D) at 1.

- Upon default, Plaintiff is entitled to recover expenses that it incurs during its efforts to protect and secure its rights in the property and collect and enforce the promissory notes. Such expenses shall be added to the principal of the loans and shall accrue interest at the same rate as does the principal. See id., Ex. 3(1)(B) ¶ 13; id., Ex. 3(1)(C) ¶ 11; id., Ex. 3(1)(D) at 1.

- Upon default, Plaintiff also is entitled to recover reasonable attorney's fees. Like the expenses noted above, such fees shall be added to the principal of the loans and shall accrue interest at the same rate as does the principal. See id., Ex. 3(1)(B) ¶ 14; id., Ex. 3(1)(C) ¶ 12; id., Ex. 3(1)(D) at 1.

4.  *Defendant's Default Under the Loans*

Defendant failed to make payments on either of the loans due on or after February 20, 2009. On August 26, 2010, Plaintiff served a notice of acceleration on Defendant advising Plaintiff that, in order to cure the default and avoid the commencement of foreclosure proceedings, Defendant would be required to pay the sum of $8,688,854.67 by September 10, 2010. See Steiner Aff., Ex. 4(15). Defendant failed to make such payment.

B.   **Procedural History**

Plaintiff commenced this action for foreclosure on October 26, 2010, filed an amended complaint on February 10, 2011, and filed a second amended complaint on January 17, 2012. Dkt. Nos. 1 (Compl.), 3 (Am. Compl.), 18 (2d Am. Compl.). On March 16, 2012, Plaintiff moved to strike Defendant's answer and for summary judgment. Dkt. Nos. 21–26. While Defendant answered the second amended complaint and entered an appearance in this case, Defendant did not oppose Plaintiff's motion. As noted above, on November 7, 2012, the Court granted Plaintiff's motion to strike Defendant's answer and for summary judgment, Dkt. No. 28, and found that "plaintiff is entitled to costs, expenses, and attorney's fees under the terms of the mortgage" and that "[t]hese fees are in addition to the total amount due and owing to plaintiff under the mortgages, notes, and loan documents," id. at 5.

### III.   THE COMPUTATION OF DAMAGES

This matter thereafter was referred to the undersigned for a computation of damages. Dkt. No. 30. Pursuant to this Court's scheduling order, Dkt. No. 31, Plaintiff made a timely submission on December 21, 2012 setting forth its damages request. Dkt. Nos. 32–35. Defendant made no responsive submission.

Following an initial review of Plaintiff's submission, this Court determined that it required additional information in order to assess the accuracy of Plaintiff's request and, on February 6, 2013, ordered Plaintiff to submit supplemental materials. Dkt. No. 36. Specifically, the Court noted that Plaintiff had submitted "conclusory requests for damages . . . including outstanding principal, interest, late charges, real estate taxes, appraisal fees, and attorney's fees," had not "itemized or supplied any underlying documentation to support the tax and fee figures," and had not "presented detailed calculations which demonstrate how the interest, late charges,

etc. have been computed." Id. at 1. Accordingly, the Court ordered Plaintiff to "submit additional affirmations, documents, and calculations to support its proposed damages figures." Id. at 2. Plaintiff filed its further submission on February 20, 2013. Dkt. No. 37.

A.  **Plaintiff's Damages Request**

As set forth in additional detail below, Plaintiff claims that the total amount due and owing on both loans as of February 12, 2013 is **$12,063,975.55**.

1.  *Loan 1*

According to Plaintiff, the amounts due and owing on Loan 1 as of February 12, 2013 are as follows:

| Principal | $6,974,218.30 |
|---|---|
| Interest | $3,425,891.01 |
| Late Charges | $108,840.07 |
| Real Estate Taxes | $1,319,820.72 |
| Force-Placed Insurance | $34,284.59 |
| Legal Fees Already Disbursed | $4374.55 |
| Legal Fees To Be Disbursed | $24,688.60 |
| Appraisal Fees | $29,353.12 |
| Refund of Fee Escrow | ($91.00) |
| **Total as of February 12, 2013** | **$11,921,379.96** |

Dkt. No. 37 (Additional Declaration of James Toscano ("Toscano Add'l Decl.")), Ex. 1 at 1 (unpaginated); Am. Proposed Findings of Fact and Conclusions of Law ¶ 21 (setting forth amount of legal fees that have not yet been disbursed). Plaintiff represents that interest shall continue to accrue on the outstanding principal of Loan 1 at the *per diem* rate of $2324.74 after February 12, 2013. Toscano Add'l Decl., Ex. 1 at 1.

In addition to the payoff statement summarizing these numbers, Plaintiff has set forth for the Court its calculations of interest and late charges and has provided underlying documentation to support the amount that it has expended on real estate taxes and appraisal fees. See Toscano Add'l Decl., Exs. 1–9. While Plaintiff has submitted a spreadsheet itemizing the disbursements that it already has made for legal fees, Plaintiff has not submitted contemporaneous time records or any other underlying documentation to support its claim for such fees or to corroborate its claim for as yet unpaid attorneys' fees. Plaintiff also has not supplied any underlying documentation to support its claim for insurance expenses.

2.  *Loan 2*

According to Plaintiff, the amounts due and owing on Loan 2 as of February 12, 2013 are as follows:

| Principal | $94,383.68 |
| Interest | $46,363.36 |
| Late Charges | $125.84 |
| Appraisal Fees | $146.88 |
| Legal Fees | $1793.83 |
| Refund of Fee Escrow | ($218.00) |
| **Total as of February 12, 2013** | **$142,595.59** |

Id., Ex. 10 at 1 (unpaginated). Plaintiff claims that interest shall continue to accrue on the outstanding principal of Loan 2 at the *per diem* rate of $31.46 after February 12, 2013. Id. In support of these figures, Plaintiff has submitted its calculations of interest and late charges and has provided documentation of the appraisal fees that it has paid. See id., Ex. 10 at 2–3; id., Exs. 8–9. As noted above, Plaintiff has not submitted underlying documentation to support its claim for legal fees, aside from internally generated spreadsheets itemizing some of these expenses.

6

B.     **The Court's Analysis**

A court conducting a computation of damages is not obligated to conduct a hearing and may instead rely on documentary submissions so long as it has "(a) determined the proper rule for calculating damages on the claim, and (b) concluded that the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified." RLI Ins. Co. v. King Sha Grp., 598 F. Supp. 2d 438, 441 (S.D.N.Y. 2009) (internal citation omitted) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)); accord Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[T]he court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum."). Using this standard, the Court has reviewed each aspect of Plaintiff's damages request and offers the following recommendations.

1.     *Principal*

As set forth above, the promissory notes for Loans 1 and 2 provide that, upon default, all or any part of the balance of unpaid principal and accrued interest becomes immediately due and payable. See Steiner Aff., Ex. 3(1)(B) ¶ 10; id., Ex. 3(1)(C) ¶ 9; id., Ex. 3(1)(D) at 1. Plaintiff's business records demonstrate that the outstanding principal balance on Loan 1 is $6,974,218.30 and that the outstanding principal balance on Loan 2 is $94,383.68. See Toscano Add'l Decl., Ex. 1 at 1, 6, 10–11; id., Ex. 10 at 5, 8–9, 12.

Accordingly, I respectfully recommend that Plaintiff be awarded **$6,974,218.30** for outstanding principal on Loan 1 and **$94,383.68** for outstanding principal on Loan 2.

2.     *Interest*

Pursuant to the notes, the principal for each loan accrued interest at the annual rate of

eight percent prior to default and continues to accrue interest at an increased annual rate of twelve percent following default. See Steiner Aff., Ex. 3(1)(B) ¶¶ 2, 8; id., Ex. 3(1)(C) ¶¶ 2, 8; id., Ex. 3(1)(D) at 1. The notes also provide that the "bankers rule" shall be used to calculate interest, pursuant to which the *per diem* interest rate is to be based upon a 360-day year. See id., Ex. 3(1)(B) ¶ 18; id., Ex. 3(1)(C) ¶ 16; id., Ex. 3(1)(D) at 1.

    a.    <u>Loan 1</u>

Plaintiff claims that Defendant owes $48,044.61 in pre-default interest, for the 31-day period from January 21, 2009 through February 20, 2009, and $3,377,846.40 in post-default interest, for the 1453-day period from February 21, 2009 through February 12, 2013, for a total of $3,425,891.01 in accrued interest on Loan 1 as of February 12, 2013.[2] See Toscano Add'l Decl., Ex. 1(b) at 1 (unpaginated).

Having conducted independent calculations and having reached the same figures as those proposed by Plaintiff, I respectfully recommend that Plaintiff be awarded **$3,425,891.01** in accrued interest on Loan 1 through February 12, 2013. I also recommend that additional interest continue to accrue on the principal balance of Loan 1 at the *per diem* rate of **$2324.74** from February 13, 2013 until the date of entry of judgment.

    b.    <u>Loan 2</u>

Plaintiff claims that Defendant owes $650.20 in pre-default interest, for the 31-day period from January 21, 2009 through February 20, 2009, and $45,713.16 in post-default

---

[2] The Court notes that Plaintiff purports to seek interest for the periods of January 20, 2009 through February 20, 2009 and February 20, 2009 through February 12, 2013; however, based on the number of days in each of the periods proposed by Plaintiff, the Court has deduced that Plaintiff actually seeks pre-default interest that accrued from January 21, 2009 through February 20, 2009 and post-default interest that accrued from February 21, 2009 through February 12, 2013, respectively. The same is true for the interest periods that Plaintiff has proposed for Loan 2, as discussed below.

interest, for the 1453-day period from February 21, 2009 through February 12, 2013, for a total of $46,363.36 in accrued interest on Loan 2 as of February 12, 2013. See id., Ex. 10 at 3.

Having conducted independent calculations and having reached the same figures as those proposed by Plaintiff, I respectfully recommend that Plaintiff be awarded **$46,363.36** in accrued interest on Loan 2 through February 12, 2013. I also recommend that additional interest continue to accrue on the principal balance of Loan 2 at the *per diem* rate of **$31.46** from February 13, 2013 until the date of entry of judgment.

3.  *Late Charges*

The notes governing Loans 1 and 2 provide that, for each monthly installment payment that is overdue by more than ten days, Defendant is required to pay a late charge to Plaintiff in an amount equal to five percent of that monthly installment payment. See Steiner Aff., Ex. 3(1)(B) ¶ 5; id., Ex. 3(1)(C) ¶ 4; id., Ex. 3(1)(D) at 1. For Loan 1, Defendant was obligated to make fixed monthly installment payments of principal and interest in the amount of $55,512.22 from July 20, 2007 through May 20, 2012 and to pay the entire outstanding balance of principal and interest, if any, on June 20, 2012. See id., Ex. 3(1)(B) ¶ 2. For Loan 2, Defendant was obligated to make variable interest-only monthly installment payments from July 20, 2007 through May 20, 2009 and to pay the entire outstanding balance of principal and interest, if any, on June 20, 2009. See id., Ex. 3(1)(C) ¶¶ 2–3; id., Ex. 3(1)(D) at 1.

Late charges that are owing under a mortgage certainly "may be awarded to a plaintiff in a foreclosure action." Fed. Home Loan Mortg. Corp. v. Perez, No. CV 91-0812 (JBW), 1992 WL 350595, at *2 (E.D.N.Y. Nov. 23, 1992). "Under New York law," however, "'[i]n the absence of a provision in the mortgage to the contrary, the collection of late fees after a mortgage note has been accelerated is impermissible.'" 4 B's Realty 1530 CR39, LLC v.

Toscano, 818 F. Supp. 2d 654, 662 (E.D.N.Y. 2011) (quoting Carreras v. Weinreb, 826 N.Y.S.2d 72, 74 (2d Dep't 2006)). The reason for the presumption "against awarding post-acceleration late charges is that it is 'inconsistent to allow a lending institution to accelerate a note, thereby denying the debtor the right . . . to make monthly installments and to continue to insist on its own right . . . to impose monthly late charges.'" Id. (quoting Green Point Sav. Bank v. Varana, 653 N.Y.S.2d 656, 657 (2d Dep't 1997)). The notes in this case do not expressly provide for the imposition of post-acceleration late charges as a remedy upon default. See Steiner Aff., Ex. 3(1)(B) ¶¶ 5, 10; id., Ex. 3(1)(C) ¶¶ 4, 9; id., Ex. 3(1)(D) at 1.

    a.    Loan 1

Plaintiff claims that Defendant owes $108,840.07 in late charges on Loan 1. See Toscano Add'l Decl., Ex. 1(b) at 2. Plaintiff derives these charges based on five percent of each of sixteen monthly installments, in the amount of $73,598.91, for the period from February 2009 through November 2010, and five percent of each of eighteen monthly installments, in the amount of $55,512.22, for the period from December 2010 through May 2012.[3] See id. Having reviewed Plaintiff's submission, I respectfully recommend that the Court make two adjustments to Plaintiff's proposed calculation of late charges. First, given that the note governing Loan 1 specifically provides that Defendant shall make fixed monthly installment payments in the amount of $55,512.22 and Plaintiff has offered no explanation for the increased monthly payment amounts set forth in its late-charge calculations, I respectfully recommend that the Court award late charges based only on monthly installment payments of $55,512.22. Second, in

---

[3] The Court notes that, according to Plaintiff's calculations, all of the monthly installment payments actually were in the amount of $73,598.91, though the late charge was calculated based on the full amount of $73,598.91 for only sixteen of the payments, while the remaining charges were calculated based on the reduced amount of $55,512.22. See id.

light of New York's general rule against awarding post-acceleration late charges in the absence of explicit contractual language to the contrary, I respectfully recommend that the Court award late charges only through September 2010, which is the last late charge that would have been incurred before Plaintiff commenced this foreclosure action in October 2010. See Toscano, 818 F. Supp. 2d at 663 (finding that plaintiff was "not entitled to post-acceleration late charges" and therefore awarding "only . . . the late charges which accrued prior to the commencement of the foreclosure action").

Having made these modifications to Plaintiff's proposed calculations, I respectfully recommend that Plaintiff be awarded **$38,858.55** for late charges on Loan 1, based on a five percent late charge incurred for each of fourteen monthly installment payments in the amount of $55,512.22 that were due from February 2009 through September 2010.

        b.    <u>Loan 2</u>

Plaintiff claims that Defendant owes $125.84 in late charges on Loan 2. See Toscano Add'l Decl., Ex. 10 at 4. Plaintiff derives these charges based on five percent of each unpaid interest-only monthly installment that was due from February 2009 through May 2009. See id. Having independently recreated Plaintiff's calculations, I am satisfied that Plaintiff's proposed amount is accurate and therefore respectfully recommend that Plaintiff be awarded **$125.84** for late charges on Loan 2.

        4.    *Real Estate Taxes*

Pursuant to the notes, any failure by Defendant to pay or provide proof of payment of taxes constitutes an event of default. See Steiner Aff., Ex. 3(1)(B) ¶ 7(G); id., Ex. 3(1)(C) ¶ 6(G). The notes further provide that, upon default, Plaintiff is entitled to recover the expenses

11

that it incurs during its efforts to protect and secure its rights in the property.[4] See id., Ex. 3(1)(B) ¶ 13; id., Ex. 3(1)(C) ¶ 11; id., Ex. 3(1)(D) at 1. Additionally, the mortgage agreements provide that Plaintiff may, at its own option, pay taxes that are owed on the property and that any such expenses that Plaintiff incurs will be considered escrow advancements for which Defendant is responsible to pay. See id., Ex. 3(1)(E) §§ 2.05, 2.06; id., Ex. 3(1)(F) §§ 2.05, 2.06. In a foreclosure proceeding, "[w]here a defaulting borrower is liable under a mortgage for the payment of taxes, the mortgagee is authorized to protect its security by paying the taxes," and the amount that is advanced by the mortgagee for this purpose "should be added to the [borrower's] indebtedness." Perez, 1992 WL 350595, at *2, *4.

Plaintiff claims that it has advanced $1,319,820.72 in order to pay real estate taxes that were due for the subject property. See Toscano Add'l Decl., Ex. 1(a). The underlying documentation submitted by Plaintiff establishes that Plaintiff paid taxes on the property in the total amount that it claims. See id., Ex. 2 (copies of tax information report and endorsed check dated February 2, 2010 for tax payment in amount of $274,363.40 with notations reflecting that $72,346.76 was covered by existing escrow funds and the remaining $202,016.64 was advanced by Plaintiff); id., Ex. 3 (copies of e-mail correspondence, statement, and check dated March 1, 2011 for tax payment in amount of $282,794.67); id., Ex. 4 (copies of receipt and check dated March 1, 2011 for tax payment in amount of $218,713.77); id., Ex. 5 (copies of tax statement and check dated March 7, 2012 for tax payment in amount of $300,119.20); id., Ex. 6 (copies of tax information report and check dated September 13, 2012 for tax payment in amount of

---

[4] Pursuant to the notes, such expenses shall be added to the principal of the loans and shall accrue interest at the same rate as does the principal. See id., Ex. 3(1)(B) ¶ 13; id., Ex. 3(1)(C) ¶ 11. Plaintiff, however, has not requested interest on these expenses.

$132,366.99); id., Ex. 7 (copies of tax information report and check dated February 4, 2013 for tax payment in amount of $183,809.45).

Accordingly, I respectfully recommend that Plaintiff be awarded **$1,319,820.72** for real estate tax expenses.

5.     *Insurance Coverage*[5]

The notes and mortgage agreements governing Loans 1 and 2 provide that any failure by Defendant to obtain or maintain insurance coverage as required by Plaintiff constitutes an event of default and that, unless Defendant presents Plaintiff with evidence of insurance coverage for the property, Plaintiff may purchase insurance at Defendant's expense in order to protect its interests in the property.[6] See Steiner Aff., Ex. 3(1)(B) ¶¶ 7(D), 20; id., Ex. 3(1)(C) ¶¶ 6(D), 18; id., Ex. 3(1)(D) at 2; id., Ex. 3(1)(E) §§ 2.03, 2.06; id., Ex. 3(1)(F) §§ 2.03, 2.06. Under New York foreclosure law, "[t]he breach of a provision requiring a mortgagor to insure the mortgaged premises gives the mortgagee the right to purchase insurance for the protection of its security and to add the expense to the mortgagor's indebtedness." Perez, 1992 WL 350595, at *2.

Plaintiff claims that it purchased insurance coverage for the subject property in the amount of $34,284.59. See Toscano Add'l Decl., Ex. 1 at 6 (loan payoff checklist including entry for "force placed insurance" in the amount of $34,284.59) (typeface altered from original);

---

[5] The Court notes that Plaintiff's initial submission did not include a request for reimbursement of insurance coverage expenses. Rather, Plaintiff added this request in its supplemental submission. Compare Dkt. No. 33 (Supplemental Declaration of James Toscano), Ex. 1, with Toscano Add'l Decl., Ex. 1 at 1.

[6] Additionally, as discussed above, the notes provide that Plaintiff is entitled to recover any expenses that it incurs in protecting its interest in the property following Defendant's default. See Steiner Aff., Ex. 3(1)(B) ¶ 13; id., Ex. 3(1)(C) ¶ 11; id., Ex. 3(1)(D) at 1. Pursuant to the notes, such expenses shall be added to the principal of the loans and shall accrue interest at the same rate as does the principal, see id., Ex. 3(1)(B) ¶ 13; id., Ex. 3(1)(C) ¶ 11. Plaintiff, however, has not requested interest on these expenses.

id., Ex. 1(a) (spreadsheet with itemized entry for "WNC Insurance" in the amount of $34,284.59). While Plaintiff's internally generated documents reference this expense, Plaintiff has not supplied the Court with invoices or any other underlying documentation reflecting the expense, as it has for the tax expenses and appraisal fees. The Court, therefore, is not satisfied that Plaintiff has adequately demonstrated that it is entitled to these damages.

Accordingly, I respectfully recommend that Plaintiff receive no award for insurance coverage expenses.

6. *Legal Fees*

Pursuant to the terms of the notes and mortgage agreements, Plaintiff is entitled to recover reasonable attorneys' fees that it incurs following Defendant's default.[7] See Steiner Aff., Ex. 3(1)(B) ¶ 14; id., Ex. 3(1)(C) ¶ 12; id., Ex. 3(1)(D) at 1; id., Ex. 3(1)(E) § 5.03; id., Ex. 3(1)(F) § 5.03. "A plaintiff may . . . recover its attorneys fees incurred in a foreclosure action if the parties' agreement has provided for them" and where the "award of fees . . . bear[s] a reasonable relationship to the amounts owing to the plaintiff and to the time and effort expended in the foreclosure action." Perez, 1992 WL 350595, at *2.

Plaintiff represents that it already has expended $4374.55 on legal fees in connection with the foreclosure proceedings for Loan 1, see Toscano Add'l Decl., Ex. 1(a) at 1, and $1793.83 in legal fees in connection with the foreclosure proceedings for Loan 2, see id., Ex. 10 at 2, for a total of $6168.38 in legal fees that already have been disbursed. In support of this claim, Plaintiff has submitted internally generated expense spreadsheets that include itemized entries describing "legal services Re: v. Shree Ganesh (Foreclosure)" that were performed by

---

[7] While Plaintiff is entitled to recover interest on attorneys' fees pursuant to the notes, see Steiner Aff., Ex. 3(1)(B) ¶ 14; id., Ex. 3(1)(C) ¶ 12, Plaintiff has not requested such interest.

two different law firms for various periods of time.[8] See Toscano Add'l Decl., Ex. 1(a); id., Ex. 10 at 2. Because (1) the agreements between the parties provide that Plaintiff is entitled to legal fees, (2) Plaintiff has offered some corroboration of those fees in its itemized spreadsheets, (3) Defendant has not objected to the reasonableness of those fees, and (4) the amount requested strikes the Court as reasonable, given the size of the amounts owed to Plaintiff and the procedural history of the instant foreclosure proceedings, I respectfully recommend that Plaintiff be awarded attorneys' fees in the amount of **$6168.38**.[9]

In its Proposed Findings of Fact and Conclusions of Law, Plaintiff claims an additional $24,688.60 in legal fees that it allegedly has incurred but has not yet paid. See Proposed

---

[8] The Court notes that two of the entries on Plaintiff's spreadsheets actually refer to "Shree Ganesh Sept 2010 legal services Re: General Matters" and do not expressly indicate that those fees were incurred in connection with the foreclosure proceedings. Toscano Add'l Decl., Ex. 1(a) at 1; id., Ex. 10 at 2. While the language set forth in the mortgage agreements provides that Plaintiff is entitled to reasonable attorneys' fees that are incurred in connection with the default, collection, or foreclosure proceedings, see Steiner Aff., Ex. 3(1)(E) § 5.03; id., Ex. 3(1)(F) § 5.03, the notes provide simply that, "[u]pon default . . . , [Plaintiff] may recover from [Defendant] reasonable attorneys' fees incurred" by Plaintiff, id., Ex. 3(1)(B) ¶ 14; id., Ex. 3(1)(C) ¶ 12. Moreover, according to Plaintiff, the legal fees claimed for work on "general matters" amount only to $45.88. See Toscano Add'l Decl., Ex. 1(a); id., Ex. 10 at 2.

[9] The Court notes, however, that a number of district courts have employed the Second Circuit's "presumptively reasonable fee" analysis in the mortgage foreclosure setting and therefore have required contemporaneous time records to support applications for attorneys' fees. See, e.g., U.S. Bank, N.A. v. Byrd, 854 F. Supp. 2d 278, 285–88 (E.D.N.Y. 2012); Toscano, 818 F. Supp. 2d at 663–66. The "presumptively reasonable fee" analysis generally is used to assess fee applications made pursuant to fee-shifting statutes, see, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182 (2d Cir. 2008), and New York state courts seem to apply a somewhat less exacting standard when assessing fee applications made in the context of foreclosure proceedings, see, e.g., Kenneth Pregno Agency, Ltd. v. Letterese, 492 N.Y.S.2d 824, 825–26 (2d Dep't 1985) (noting that "legal fees were properly included in the judgment since they were expressly provided for in the mortgage, and since they bore a reasonable relationship to the unrecovered principal, and to the time and effort expended in the foreclosure action"). Accordingly, I have not required that Plaintiff submit contemporaneous time records to support its claim for the $6168.38 in legal fees that are itemized in the spreadsheets it has submitted.

15

Findings of Fact and Conclusions of Law ¶ 21; Am. Proposed Findings of Fact and Conclusions of Law ¶ 21. Because Plaintiff has submitted no documentary evidence whatsoever to corroborate this request, I respectfully recommend that Plaintiff not be awarded for these additional fees.

7.   *Appraisal Fees*

As discussed above, pursuant to the notes, Plaintiff is entitled to recover collection and enforcement expenses.[10] See Steiner Aff., Ex. 3(1)(B) ¶ 13; id., Ex. 3(1)(C) ¶ 11; id., Ex. 3(1)(D) at 1. The mortgage agreements specify that enforcement expenses include appraisal fees. See id., Ex. 3(1)(E) § 5.03; id., Ex. 3(1)(F) § 5.03. Appraisal fees may be "incorporated into the mortgage debt" pursuant to a mortgage agreement where the appraisal fees were "incurred in the enforcement of [plaintiff's] rights under the [m]ortgage." Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc., No. CV 10-4677 (ADS)(ETB), 2012 WL 1078963, at *5 (E.D.N.Y. Jan. 4, 2012) (Report and Recommendation), adopted by 2012 WL 107886 (E.D.N.Y. Mar. 30, 2012).

Plaintiff claims that it has expended $29,500 in appraisal fees.[11] See Toscano Add'l Decl., Ex. 1(a) at 1; id., Ex. 10 at 2. In support of its request, Plaintiff has submitted underlying documentation of these expenses, including copies of invoices. See id., Ex. 8 (invoice dated May 11, 2010 reflecting charge of $9000.00; invoice dated October 3, 2011 reflecting charge of

---

[10] While the notes provide that such expenses shall be added to the principal of the loans and shall accrue interest at the same rate as does the principal, see id., Ex. 3(1)(B) ¶ 13; id., Ex. 3(1)(C) ¶ 11, Plaintiff has not requested interest on the appraisal fees.

[11] The Court notes that Plaintiff has purported to allocate a larger portion of the appraisal fees to Loan 1 and a smaller portion to Loan 2 and therefore has presented separate requests for appraisal fees for each of the loans. Given the nature of the documentary evidence, however, the Court finds it easier to consider Plaintiff's claim for appraisal fees as a single request.

$8000.00; invoice dated June 28, 2012 reflecting charge of $6500.00); id., Ex. 9 (invoice dated May 26, 2010 reflecting charge of $2000.00; invoice dated October 3, 2011 reflecting charge of $8000.00; invoice dated July 9, 2012 reflecting charge of $2000.00). Having reviewed the documentation supplied by Plaintiff, the Court concludes that Plaintiff has submitted two copies of the October 3, 2011 invoice in the amount of $8000.00 and apparently has failed to submit the October 13, 2011 invoice in the amount of $2000.00 that is referenced in Plaintiff's spreadsheet. See id., Ex. 1(a) at 1.

Based on the documentation submitted by Plaintiff, and having disregarded the duplicate October 13, 2011 invoice, I respectfully recommend that Plaintiff be awarded **$27,500.00** for appraisal fees.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiff be awarded **$6,974,218.30** for outstanding principal on Loan 1; **$94,383.68** for outstanding principal on Loan 2; **$3,425,891.01** for accrued interest on Loan 1 through February 12, 2013; **$46,363.36** for accrued interest on Loan 2 through February 12, 2013; **$38,858.55** for late charges on Loan 1; **$125.84** for late charges on Loan 2; **$1,319,820.72** for real estate tax expenses; **$6168.38** for attorneys' fees; and **$27,500.00** for appraisal fees, for a total award—following deductions for the escrow refunds proposed by Plaintiff in the amount of **$91.00** for Loan 1 and **$218.00** for Loan 2, respectively, see Toscano Add'l Decl., Ex. 1 at 1; id., Ex. 10 at 1—of **$11,933,020.84.**

In addition, I respectfully recommend that Plaintiff be awarded interest to accrue on the outstanding principal for each loan from February 13, 2013 until the date of entry of judgment at the *per diem* rate of **$2324.74** for Loan 1 and at the *per diem* rate of **$31.46** for Loan 2, respectively.

17

Dated: March 4, 2013
      White Plains, New York

                              Respectfully submitted,

                              _____
                              Paul E. Davison
                              United States Magistrate Judge

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to serve and file written objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Vincent Briccetti, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

      Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

      Requests for extensions of time to file objections must be made to Judge Briccetti.